UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

**RAVEN GRIFFIN,**

    **Plaintiff,**

  **v.**                                            Case No. 21-CV-63

**KILOLO KIJAKAZI,**
**Acting Commissioner of Social Security,**

    **Defendant.**

---

## DECISION AND ORDER

---

Raven Griffin seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income ("SSI") under the Social Security Act, 42 U.S.C. § 405(g). For the reasons below, the Commissioner's decision is affirmed and the case is dismissed.

## BACKGROUND

In September 2016, Griffin filed applications for disability insurance benefits and SSI alleging disability beginning on January 1, 2015 due to headaches, back injury, depression, anxiety, heart problems, and hypothyroidism. (Tr. 334.) Her applications were denied initially and upon reconsideration (Tr. 99–100, 169–70, 174), and Griffin requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held before ALJ Kimberly Cromer on January 14, 2019. (Tr. 79–98.) In a decision issued March 4, 2019, ALJ Cromer found Griffin was not disabled from her alleged onset date of January 1, 2015 through the date of the decision. (Tr. 174–87.) Griffin appealed, and the Appeals Council remanded her claims in

October 2019. (Tr. 193.) On February 11, 2020, a hearing was held before ALJ Guila Parker. (Tr. 33–78.) Griffin, appearing *pro se*, testified at the hearing, as did Donna Toogood, a vocational expert ("VE"). (Tr. 34.)

In a written decision issued March 12, 2020, the ALJ found that Griffin had the severe impairments of degenerative disc disease of the cervical and lumbar spine, right carpal tunnel syndrome, headaches, obesity, and an adjustment disorder. (Tr. 14.) The ALJ further found that Griffin did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (the "listings"). (Tr. 14–16.) The ALJ found that Griffin had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 16.) Specifically, the ALJ found that Griffin could lift and carry twenty pounds occasionally and ten pounds frequently; sit for about six hours per eight-hour day; and stand or walk about six hours per eight-hour day. (*Id.*) The ALJ found that Griffin could push or pull as much as she can lift and carry; however, she could not climb ladders, ropes, and scaffolds; and could not work at unprotected heights or around dangerous moving machinery. (*Id.*) The ALJ further found Griffin could occasionally climb stairs, balance on uneven terrain, stoop, kneel, crouch, or crawl; could frequently, but not constantly, reach overhead, handle, and finger with the bilateral upper extremities; could work in an environment with no more than a moderate noise intensity; and could work in an environment with light intensity no greater than what is found in a typical office setting. (*Id.*) Finally, the ALJ found Griffin capable of frequent, but not constant, rotation or extension of the neck. (Tr. 17.)

As to her mental impairments, the ALJ found Griffin able to understand, remember, and carry out simple or detailed instructions that carry a reasoning development level no

greater than 03; could maintain concentration, persistence, and pace for two-hour intervals over an 8-hour day with routine breaks; could work in a low stress job, defined as one that requires only occasional work-related decisions, involves only occasional changes in the work setting, and does not impose fast-paced production quotas; and could occasionally interact with supervisors, co-workers, and the public. (Tr. 16–17.)

While the ALJ found that Griffin was unable to perform her past relevant work as a hair braider, janitor, and van driver, the ALJ found that given Griffin's age, education, work experience, and RFC, significant numbers of jobs existed in the national economy that she could perform. (Tr. 24–26.) As such, the ALJ found that Griffin was not disabled from her alleged onset date until the date of the decision. (Tr. 26.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Griffin's request for review. (Tr. 1–5.)

## DISCUSSION

### 1. *Applicable Legal Standards*

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported her decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (internal quotation and citation omitted). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811. The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

3

The ALJ is also expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

### 2. *Application to this Case*

Griffin, again representing herself, makes several general arguments as to how the ALJ erred in finding her not disabled. Being mindful that *pro se* pleadings are held to less exacting standards than those prepared by counsel and are to be liberally construed, *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), it appears Griffin argues that the ALJ: (1) improperly analyzed her medically determinable severe impairments; (2) improperly limited her to a reduced range of light work; (3) improperly evaluated her subjective symptoms; (4) failed to give certain doctor's opinions controlling weight; and (5) improperly determined that she could work as a cleaner, mailroom clerk, and cafeteria attendant. (Pl.'s Br. at 8–10, Docket # 12.) I will address each argument in turn.

### 2.1 Evaluation of Medically Determinable Impairments

In step two of the disability analysis, the ALJ determines whether a claimant has one or more medically determinable physical or mental impairments. 20 C.F.R. § 404.1521.[1] To

---

[1] As the regulations governing the evaluation of disability for disability insurance benefits and SSI are nearly identical, I will generally refer to the regulations for disability insurance benefits found at 20 C.F.R. § 404.1520, *et seq.* for ease of reference.

be a "medically determinable impairment," the impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521.

Griffin argues that the ALJ failed to consider her physical and mental impairments, including obesity, as medically determinable severe impairments. (Pl.'s Br. at 9.) In determining Griffin's severe and non-severe impairments, the ALJ specifically stated that she considered the following impairments and determined them to be non-severe: bilateral knee and ankle strains, right hand and wrist sprain, contusion, and lacerations. (Tr. 14.) The ALJ then continued, however, to state that "[o]ther impairments that may appear in the record and that are not specifically mentioned here are considered nonsevere because they are transient, controlled, resolved, or do not significantly [limit] the claimant's ability to perform basic work activity." (*Id.*) Griffin appears to argue that the ALJ erred in failing to specifically articulate her analysis regarding the severity of her other impairments. Although it is not entirely clear which impairments she argues the ALJ erroneously omitted, Griffin points to the fact that several diagnoses appear in the record, including depression; anxiety; memory impairment; PTSD; paranoia; back and neck pain subsequent to injury; hypothyroidism; anemia; carpal tunnel pain; and obesity. (Pl.'s Supp. Br. at 13, Docket # 20.)

Of these listed diagnoses, however, the only ones not appearing in the ALJ's opinion are hypothyroidism and anemia. While the ALJ did not specifically articulate her analysis of either condition, Griffin has not shown how they impact her ability to work. Griffin testified that her hypothyroidism caused her to gain weight and lose her hair (Tr. 43) and her anemia

5

caused her to feel cold (Tr. 58). While the medical records indicate that she takes medication for hypothyroidism (Tr. 430) and that she is under medical supervision for both conditions (Tr. 587), the records do not otherwise address any further treatment or limitations stemming from these two conditions. As such, any error in failing to address hypothyroidism and anemia is harmless.

As to obesity, the ALJ *did* find it to be a medically determinable severe impairment (Tr. 14) and stated that the effect of Griffin's obesity was taken into consideration when limiting her to light level work (Tr. 20, 22). Griffin appears to fault the ALJ for not considering her obesity under the listings (Pl.'s Br. at 9); but there is no listing for obesity. *See Castile v. Astrue*, 617 F.3d 923, 928 (7th Cir. 2010) ("Both the ALJ and the district court noted the strikingly relevant fact that the SSA has removed obesity as a separate listing from the list of disabling impairments."). Obesity is considered pursuant to Social Security Ruling 02-1p, which provides that the ALJ must consider the combined effects of obesity with other impairments in determining whether an individual is disabled. SSR 02-1p. Thus, Griffin has not demonstrated that the ALJ erred in consideration of her obesity.

For these reasons, I do not find the ALJ erred in consideration of Griffin's medically determinable severe impairments and thus remand is not warranted on this ground.

### 2.2 Limitation to a Reduced Range of Light Work

Griffin challenges the ALJ's RFC finding that she can perform a reduced range of light work. In her brief, Griffin states that there is no medical expert or evidentiary basis for finding that Griffin can lift or carry up to twenty pounds occasionally and up to ten pounds frequently; stand or walk for approximately six hours and sit for approximately six hours per eight-hour workday; and push/pull as much as she can lift and carry. (Pl.'s Supp. Br. at 10.) She also

6

faults ALJ Parker for finding she can crawl occasionally when ALJ Cromer previously found that she can never crawl. (*Id.*)

In finding her capable of performing a reduced range of light work, the ALJ stated that while Griffin's multiple motor vehicle accidents throughout the relevant time period "certainly" were "significant inciting events," the record evidence was inconsistent with her alleged level of impairment. (Tr. 22.) The ALJ considered Griffin's testimony that she cannot sit or walk for prolonged periods of time due to her chronic pain and cannot lift more than five pounds or stand for more than five to seven minutes. (Tr. 17.) In rejecting the severity of her allegations, the ALJ cites to Griffin's reports of improvement in pain level with physical therapy; the fact that while physical examinations routinely showed tenderness to palpation, muscle spasm, and some reduced range of motion, there were no neurological deficits; imaging of the cervical and lumbar spine that was overall unremarkable; and Griffin's lack of continuity of care for her allegedly disabling pain symptoms. (*Id.*)

The ALJ also relied on the opinion of State Agency physician Dr. Yeshwanth Bekal, who opined exertional limitations mirroring the RFC. (Tr. 23, 142.) The ALJ also assigned, however, more restrictive postural, environmental, and manipulative limitations than those opined by Dr. Bekal, stating that the record supported greater limitations to account for her headaches and carpal tunnel syndrome. (Tr. 23, 142–43.) The ALJ also considered the opinion of Griffin's treating physician, Dr. Joselito Baylon, from October 2014 opining that Griffin could lift five pounds, "sit down only," and rarely twist, stoop, crouch/squat, climb ladders, or climb stairs. (Tr. 423–24). The ALJ accorded this opinion little weight, finding the opinion internally inconsistent and inconsistent with the benign findings pertaining to Griffin's low back in the record as a whole. (Tr. 23.)

7

As to ALJ Parker's finding that Griffin could occasionally crawl in contrast to ALJ Cromer's previous finding that Griffin could never crawl, ALJ Parker was not bound by this prior determination, and Griffin has failed to show the ALJ erred in determining her postural limitations.

For these reasons, Griffin has not shown that the ALJ erred in limiting her to a reduced range of light work.

### 2.3 Evaluation of Subjective Symptoms

Griffin very generally argues that the ALJ either improperly discredited or failed to explain her basis for rejecting Griffin's testimony regarding her symptoms. (Pl.'s Br. at 9.) In considering the consistency of the claimant's subjective symptoms with the record as a whole, the ALJ considers: the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; medications and their side effects; non-medication treatments; any other measures used to relieve pain or other symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain and other symptoms. 20 C.F.R. § 404.1529(c)(3).

The ALJ discounted Griffin's assertions of disabling limitations due to their inconsistency with the record evidence. For example, the ALJ noted that Griffin engaged in two courses of physical therapy immediately following two car accidents and saw four different pain management specialists for one initial examination each, suggesting that "her symptoms may not have been as limiting as she alleged, considering the lack of ongoing care." (Tr. 22.) To support her finding, the ALJ also considered the lack of objective support for Griffin's symptoms; disparities between Griffin's Function Reports, statements to consultative examiners, and hearing testimony; and Griffin's lack of ongoing care. (*Id.*)

8

Case 2:21-cv-00063-NJ    Filed 09/08/22    Page 8 of 11    Document 25

Thus, Griffin fails to explain how the ALJ erred in her consideration of Griffin's subjective symptoms. Remand is not required on this ground.

### 2.4 Weight Assigned to Medical Provider Opinions

Griffin argues that the ALJ erroneously rejected medical opinion evidence (Pl.'s Supp. Br. at 10–11). However, it is unclear which medical opinion she contends the ALJ improperly rejected. The agency's regulations require an ALJ to consider any medical opinion provided by a medical source using several factors, including supportability, consistency, relationship with the claimant, and specialization. 20 CFR § 416.920c(c)(1)–(5). The most important factors considered when determining the persuasiveness of a medical source opinion are supportability and consistency. *Id.* § 416.920c(b)(2). Griffin alludes to Dr. Baylon's opinion in her brief (Pl.'s Supp. Br. at 12), but does not make any specific arguments as to how the ALJ erred in rejecting Dr. Baylon's opinion. To the extent Griffin challenges the weight given to Dr. Baylon's opinion, as discussed above, the ALJ did not err in rejecting this opinion. Griffin fails to develop any argument as to how the ALJ erred in weighing the medical opinion evidence. Remand is not required on this ground.

### 2.5 Determination of Other Jobs Griffin Can Perform

Finally, Griffin argues that the ALJ improperly determined that she could perform the work of cleaner, cafeteria attendant, and mailroom clerk. (Pl.'s Supp. Br. at 10.) She argues that because the ALJ determined that she could not perform her past relevant work as a janitor, and because a janitor's primary responsibility is cleaning, she also cannot perform the job of a cleaner. (*Id.*) She argues that a cafeteria attendant also includes cleaning and a mailroom clerk lifts heavy packages with constant bending, kneeling, and physical use and rotation. (*Id.*)

9

As to Griffin's previous job as a janitor, the VE testified that according to the Dictionary of Occupational Titles ("DOT"), the job is semi-skilled and generally performed as medium, though Griffin testified that she performed it as heavy. (Tr. 72.) Additionally, the VE testified that the jobs of cleaner, cafeteria attendant, and mail clerk were unskilled and light, per the DOT. (Tr. 74.) The VE testified that an individual with the RFC restrictions the ALJ assigned Griffin could perform these three jobs. (*Id.*) The ALJ asked whether the VE's testimony was consistent with the DOT, to which the VE testified that it was, except for some responses coming from her experience and training as a vocational rehabilitation counselor. (Tr. 76.)

It is understandable why Griffin is confused as to the nature of the jobs. After all, to the layman, a janitor may seem no different than a cleaner. But the VE testified as to how these jobs are defined by the DOT. For example, Griffin testified that as a janitor, she was lifting tables and chairs weighing at least fifty pounds (Tr. 50), which, as the VE testified, would be categorized as heavy work (Tr. 72). *See* 20 C.F.R. § 404.1567(d) (stating heavy work involves frequent lifting or carrying of objects weighing up to fifty pounds). However, a "cleaner" under DOT 323.687-014 performs light work, meaning lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. *See id.* § 404.1567(b). Despite Griffin's understandable confusion, she has not shown that the ALJ erred in relying on the VE's testimony regarding jobs in the national economy that she can perform.

For these reasons, Griffin has not shown the ALJ erred in this regard and remand is not warranted.

## CONCLUSION

Although Griffin alleges that the ALJ erred in multiple respects, I find the decision is supported by substantial evidence. As such, the decision is affirmed.

## ORDER

**NOW, THEREFORE, IT IS ORDERED** that the Commissioner's decision is **AFFIRMED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**. The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 8th day of September, 2022.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge